UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:


CHANDELINE JEANNE-FILS,
an individual,

      Plaintiff,

vs.

BOCA/DELRAY RENAL ASSOCIATES,
INC., a Florida corporation, and WANIA
MENDONCA, an individual,

      Defendants.

_____/

## **COMPLAINT**

    Plaintiff, CHANDELINE JEANNE-FILS, hereby sues Defendants, BOCA/DELRAY

RENAL ASSOCIATES, INC., a Florida corporation and WANIA MENDONCA, an individual,

and alleges as follows:

### **JURISDICTION AND VENUE**

    1.     This is a Complaint for damages in excess of $15,000, exclusive of attorney's fees

and costs, and which is within the jurisdictional limits of this Court.

    2.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) since a substantial

part of the events giving rise to the claims occurred in Palm Beach County, Florida.

    3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this

matter is based, in part, on an issue of federal question under 42 U.S.C. § 2000e and 42 U.S.C. §

1981.

## PARTIES

4.     Plaintiff, CHANDELINE JEANNE-FILS ("Jeanne-Fils"), is an individual residing in Broward County, Florida.

5.     Defendant, BOCA/DELRAY RENAL ASSOCIATES, INC. ("BDRA"), is a Florida corporation with its principal place of business located and doing business in Palm Beach County, Florida.

6.     Defendant, WANIA MENDONCA ("Mendonca"), is an individual believed to be residing in Palm Beach County, Florida.

7.     All conditions precedent have been met, waived, or excused.

## FACTUAL ALLEGATIONS

8.     BDRA is engaged in the business of providing dialysis services.  The principals of BDRA are Dr. Rajesh Agarwala and Dr. Reza Saffari.

9.     At all relevant times, Mendonca was the office manager for BDRA.

10.     Jeanne-Fils, who is from Haiti, started working at BDRA in March 2017 as a patient care technician.  Her job duties included assisting the patients, taking vital signs, operating the dialysis while patients are on the machines and providing basic patient care.

11.     During the time that Jeanne-Fils worked at BDRA, the company had fifteen (15) or more employees.

A.     The Hostile Work Environment Perpetuated by Mendonca

12.     Mendonca fostered a hostile work environment in her treatment of staff members, including making racially motivated comments.

13.     For example, she would act in a rude manner towards employees, calling employees names, yelling at employees and making comments about the race of employees.

14.     Specifically, Mendonca seemed to have a particular issue with employees of BDRA who are Haitian.  She would often make comments to Haitian employees such as – "I'm tired of you guys.  I'm just going to get rid of all the Haitians.  I have new people who can work for me." Mendonca also made comments in the workplace that she does not like Haitians.

15.     As evidence of her dislike of Haitians, Mendonca terminated several employees of BDRA who are of Haitian descent.

16.     Also, after learning in early 2018 that Jeanne-Fils was pregnant, Mendonca gave her more work to do, making Jeanne-Fils work even more physically demanding.

B.     <u>Mendonca and Her Daughter Violate the Nurse Practitioner Act</u>

17.     While Jeanne-Fils worked at BDRA, Mendonca's daughter, Fernanda, also worked there.  Fernanda was not licensed as an RN (Registered Nurse) or an LPN (Licensed Practical Nurse) in Florida while working at BDRA.  Also, she did not have a dialysis degree from anywhere in the U.S.

18.     Despite the lack of licensing and credentials in this State, Mendonca permitted Fernanda to draw medication given to patients.

19.     Fernanda also signed Mendonca's name on some of the flow sheets which were submitted to Medicare for reimbursement.  Also, when orders would be given for the patients by Dr. Saffari, Fernanda would have the patient sign and then she would sign the document.  Legally, the orders require the signature of a doctor since Fernanda is not registered with the state and is not authorized to sign such orders.

20.     Dr. Saffari had knowledge of Mendonca permitting Fernanda to engage in these actions in connection with treating patients and signing patient records since Mendonca told him Fernanda was going to assist with the treatment of patients.

21.     In addition, BDRA is permitting nurses, who are not RN's, to be left alone with patients during treatment.

22.     Also, there were instances of Mendonca ignoring sick patients and displaying poor patient care.

23.     Mendonca's justification for allowing Fernanda to engage in such unlawful acts is that Fernanda is licensed in Brazil, thus it is permissible for her to take the above described actions.

24.     These actions by Mendonca and Fernanda constitute violations of the Nurse Practitioner Act, as well as other state and federal laws, including, but not limited to, the procedure required for submitting for Medicare reimbursement for services rendered by BDRA.

C.     <u>Jeanne-Fils is Terminated After Informing Mendonca that Allowing Fernanda to Treat Patients and Sign Documents is Illegal</u>

25.     On Monday, May 21, 2018, Jeanne-Fils arrived for her shift at BDRA at approximately 4 a.m.  Soon after she arrived that morning, Jeanne-Fils was asked by Mendonca to sign a form addressing use of electronic devices at BDRA.  Jeanne-Fils inquired why she was being asked to sign the form since no one else was being asked at that time.  Mendonca responded that other employees signed the form the following Friday and Jeanne-Fils was not at work that day.

26.     A few hours later, after she had attended to several patients, Jeanne-Fils was speaking to one of the patients in Creole.  Mendonca accused Jeanne-Fils of telling the patient about reporting BDRA to the State for improper medical practices and accused Jeanne-Fils of having contacted the State back in January of that year.  Jeanne-Fils denied that she was saying such things to the patient and denied having contacted the State.

27.     Mendonca then advised Jeanne-Fils that because she does not have a nursing license, she can no longer work at BDRA.  Jeanne-Fils responded that Fernanda does not have a

license and she is working there and providing medical services for which she is not licensed.  At the time, Jeanne-Fils had been working for BDRA for thirteen (13) months.  She had taken the licensing exam but did not pass a portion and intended to re-take the exam.  Jeanne-Fils was required to be licensed no later than eighteen (18) months into her employment, thus she had several more months in which she could work without a license.

28.     Mendonca then told Jeanne-Fils she needed to leave the floor where patients were being treated.

29.     Jeanne-Fils responded that since Mendonca keeps accusing her of contacting the State, Jeanne-Fils was going to do just that and report the improper and illegal activities at BDRA.

30.     Jeanne-Fils then asked to speak to one of the doctors at BDRA.  Mendonca denied her request.

31.     After her request was denied, Jeanne-Fils went to sit in the lobby of BDRA to wait to speak to one of the doctors.  Mendonca told Jeanne-Fils if she did not leave the facility, Mendonca would call the police.

32.     Believing she had the right wait to speak to one of the doctors, Jeanne-Fils remained in the lobby.  Mendonca then called the police.  Jeanne-Fils left BDRA that day before the police arrived.

33.     Later in the evening of May 21, 2018, Jeanne-Fils was contacted by another employee of BDRA and was informed that due to her disagreement with Mendonca, and her threatening to call the State about BDRA, she was terminated.

34.     The real reasons Mendonca terminated Jeanne-Fils are two-fold.  One, Mendonca's dislike of Haitians as shown by her pattern of previously terminating several other Haitian employees and making disparaging comments about Haitians.

LAW OFFICES OF JASON GORDON, P.A.  3440 HOLLYWOOD BLVD., SUITE 415  HOLLYWOOD, FLORIDA 33021

35.     Two, after accusing Jeanne-Fils in January 2018 of contacting a State agency to report the illegal patient care and documentary activities occurring at BDRA – a charge which Jeanne-Fils denied – Mendonca was concerned that Jeanne-Fils would report to BDRA to State authorities as Jeanne-Fils stated she would do on the day she was terminated, because Mendonca knew Fernanda was violating Florida law by providing services and taking actions for which Fernanda was not licensed and which Mendonca permitted as Fernanda's supervisor.

36.     On November 9, 2018, Jeanne-Fils filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  A copy of the November 9, 2018 letter is attached hereto as Exhibit "A".

37.     On June 28, 2019 the EEOC issued Jeanne-Fils a Right to Sue letter, a copy of which is attached hereto as Exhibit "B".

38.     Plaintiff has retained the undersigned counsel and has agreed to pay them a reasonable fee for services rendered.

## COUNT I –DISCRIMINATION – 42 U.S.C. § 1981
### (Against BDRA and Mendonca)

39.     Jeanne-Fils realleges the allegations set forth in paragraph nos. 1 through 38 above as though fully set forth herein.

40.     42 U.S.C. § 1981(a) provides that:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by caucasian citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

41.     Jeanne-Fils, as a person of Haitian descent, is a member of a protected class based on her race and/or national origin.

42.     Jeanne-Fils was qualified for the job of patient care technician.

43.     BDRA knew of the racial motivation of Mendonca as to her terminating employees of Haitian descent, including Jeanne-Fils, yet, BDRA took no action to stop Mendonca's discriminatory actions.

44.     Jeanne-Fils suffered an adverse employment action since in May 2018 BDRA terminated her from her position as patient care technician.

45.     BDRA's decision to terminate Jeanne-Fils was based upon the recommendation of Mendonca who was Jeanne-Fils' manager at the time.

46.     Mendonca's decision to terminate Jeanne-Fils was motivated by Jeanne-Fils's race and/or national origin.

47.     Mendonca acted with intent to discriminate against Jeanne-Fils in recommending that she be terminated from BDRA.

48.     BDRA relied upon Mendonca's recommendation to terminate Jeanne-Fils without conducting an independent investigation, due in part, to Mendonca's known history of making racially derogatory comments, previously terminating other Haitian employees, and simply "rubber stamped" the recommendation that Jeanne-Fils be terminated.

49.     BDRA did not have a non-discriminatory reason for terminating Jeanne-Fils from her position with the company.

50.     There was a direct relationship between Mondonca's recommendation and the decision to terminate Jeanne-Fils.

7

51.     Any such reason BDRA may claim is non-discriminatory is in fact pretext for racial discrimination, which was the underlying basis for the termination of Jeanne-Fils.

52.     The discriminatory acts by BDRA were intentional.

53.     BDRA acted with malice or with reckless indifference to Jeanne-Fils' federally protected rights, which entitles her to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

WHEREFORE, Plaintiff, CHANDELINE JEANNE-FILS, demands entry of a judgment against Defendants, BOCA/DELRAY RENAL ASSOCIATES, INC. and WANIA MENDONCA:

a)      in an amount of her damages pursuant to 42 U.S.C. § 1981a;

b)      punitive damages pursuant to 42 U.S.C. § 1981a(b)(1);

c)      attorney's fees pursuant to 42 U.S.C. § 1988(b);

d)      costs;

e)      prejudgment interest; and

f)      all such other relief as this Court deems just and proper.

**COUNT II – 42 U.S.C. § 2000e-2 (Discrimination)**
**(Against BDRA)**

54.     Jeanne-Fils realleges the allegations set forth in paragraph nos. 1 through 38 above as though fully set forth herein.

55.     42 U.S.C. § 2000e-2(a)(Title VII of the Civil Rights Act of 1964) provides in pertinent part that:

(a) Employer practices

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

8

*See* 42 U.S.C. § 2000e-2(a)(1).

56.     42 U.S.C. § 2000e(b) defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year,…".

57.     BDRA satisfies the definition of the term "employer" for purposes of this claim as it employed fifteen (15) or more persons during the required time period.

58.     Mendonca, acting on behalf of BDRA, terminated Jeannie-Fils from her position as a patient are technician with BDRA based on Jeanne-Fils race and/or national origin.

59.     BDRA acted with malice or with reckless indifference to Jeanne-Fils's federally protected rights, which entitles her to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

WHEREFORE, Plaintiff, CHANDELINE JEANNE-FILS, M.D., demands entry of a judgment against Defendant, BOCA/DELRAY RENAL ASSOCIATES, INC.:

      a)     in an amount of her damages, including but not limited to compensatory damages, back pay pursuant to 42 U.S.C. § 2000e-5(g) and front pay;

      b)     punitive damages pursuant to 42 U.S.C. § 1981a(b)(1);

      c)     equitable relief in the form of an injunction, pursuant to 42 U.S.C. § 2000e-5(g), including, but not limited to, precluding Defendants from providing negative evaluations of Jeanne-Fils's work performance to any prospective employer, enjoining Defendants from representing in any of their employment records that Jeanne-Fils was terminated for cause, and directing that Defendants remove certain documents from Jeanne-Fils's employee, personnel or other files, including documents which may harm

Jeanne-Fils's reputation and ability to find equivalent future employment, and to maintain such documents under seal;

d)      attorney's fees pursuant to 42 U.S.C. § 2000e-5(k);

e)      costs;

f)      prejudgment interest; and

g)      all such other relief as this Court deems just and proper.

## COUNT III – FLORIDA WHISLEBLOWER CLAIM – CH. 448, FLORIDA STATUES
### (Against BDRA)

60.     Jeanne-Fils realleges the allegations set forth in paragraph nos. 1 through 38 above as though fully set forth herein.

61.     Section 448.102, Florida Statutes provides that:

Prohibitions. – An employer may not take any retaliatory personnel action against an employee because the employee has:

(1)   Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
(2)   Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
(3)   Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

*See* Section 448.102, Florida Statutes.

62.     Section 448.101(3) defines the term "employer" as "any private individual, firm, partnership, institution, corporation, or association that employs ten or more persons".

10

63.     BDRA satisfies the definition of the term "employer" for purposes of this claim as it employed ten (10) or more persons during the required time period.

64.     BDRA violated Section 448.102 by taking retaliatory action against Jeanne-Fils by terminating her after she informed Mendonca that she would report to the appropriate governmental agency that BDRA was violating the Nurse Practice Act and other laws by allowing Fernanda to provide medical care to patients, allowing her to sign Mendonca's name to forms which Fernanda is not licensed to sign and through its submission of false forms for Medicare reimbursement.

WHEREFORE, Plaintiff, CHANDELINE JEANNE-FILS, demands entry of a judgment against Defendant, BOCA/DELRAY RENAL ASSOCIATES, INC.:

> a)      in an amount of her damages, including, but not limited to, back pay, lost wages, lost benefits and compensatory damages;
>
> b)      punitive damages;
>
> c)      attorney's fees pursuant to Section 448.104, Florida Statutes;
>
> d)      costs;
>
> e)      prejudgment interest; and
>
> f)      all such other relief as this Court deems just and proper.

## COUNT IV – FLORIDA CIVIL RIGHTS ACT – CH. 760, FLORIDA STATUTES
### (Against BDRA)

65.     Jeanne-Fils realleges the allegations set forth in paragraph nos. 1 through 38 above as though fully set forth herein.

66.     Section 760.10, Florida Statutes provides that:

> 1)   It is an unlawful employment practice for an employer:

> (a)   To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

*See* Section 760.10, Florida Statutes.

67.   Section 760.02(7) defines the term "employer" as "any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person."

68.   BDRA satisfies the definition of the term "employer" for purposes of this claim as it employed fifteen (15) or more persons during the required time period.

69.   BDRA engaged in an unlawful employment practice as defined under Section 760.10 by terminating Jeanne-Fils because of her race or national origin.

70.   As a result of BDRA's unlawful employment practice Jeanne-Fils has been damaged.

WHEREFORE, Plaintiff, CHANDELINE JEANNE-FILS, demands entry of a judgment against Defendant, BOCA/DELRAY RENAL ASSOCIATES, INC.:

> a)   in an amount of her damages, including, but not limited to, back pay and compensatory damages;
>
> b)   punitive damages;
>
> c)   attorney's fees pursuant to Section 760.11(5), Florida Statutes;
>
> d)   costs;
>
> e)   prejudgment interest; and
>
> f)   all such other relief as this Court deems just and proper.

LAW OFFICES OF JASON GORDON, P.A.  3440 HOLLYWOOD BLVD., SUITE 415  HOLLYWOOD, FLORIDA 33021

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury triable on all issues and claims so triable under law.

Signed on this 26th day of September, 2019.

Law Offices of Jason Gordon, P.A.
3440 Hollywood Blvd., Suite 415
Hollywood, Florida 33021
Telephone: (954) 241-4207
Facsimile:  (954) 241-4236
FOR SERVICE OF COURT FILINGS:
jg@jgordonlegal.com
service@jgordonlegal.com

By:    /s/ Jason Gordon
       Jason Gordon, Esq.
       Fla. Bar No. 0012973

LAW OFFICES OF JASON GORDON, P.A.  3440 HOLLYWOOD BLVD., SUITE 415  HOLLYWOOD, FLORIDA 33021